*IN THE UNITED STATES DISTRICT COURT*
*FOR THE MIDDLE DISTRICT OF ALABAMA*
*SOUTHERN DIVISION*

RECEIVED

2015 FEB 13  A 9: 26

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **JEFFREY PAUL HOWE,** | ) |
| | ) |
| **Plaintiff,** | ) Civil Action No.: 1:15-CV-00113 |
| | ) |
| **v.** | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| **CITY OF ENTERPRISE,** a municipal | ) |
| **Corporation;** | ) |
| **BERNEY PARTRIDGE,** | ) |
| an individual; **THOMAS ARIAS,** an | ) |
| individual; **THOMAS D. JONES,** an | ) |
| individual; **JASON ANDERSON,** an | ) |
| individual; **THOMAS T. BRAUN,** an | ) |
| individual; **JEFFREY SPENCE,** an | ) |
| individual; **LENNIS DARBY,** an | ) |
| individual; **CHRIS HURLEY,** an | ) |
| individual; **RICHARD HAUSER,** an | ) |
| individual; **BURFORD ROBERTS,** an | ) |
| individual, | ) |
| **Defendants.** | ) |

# C O M P L A I N T

## *Introduction*

COMES NOW Plaintiff, Jeffrey Paul Howe, who shows the court the

following:

## *Summary*

This is an action for money damages.   At just before 4:00 a.m. on February

16, 2013, Plaintiff was shot twice in the back while within his home by two

1

Enterprise police officers who responded to a domestic call at Plaintiff's mobile home. The police officers arrived at Plaintiff's and knocked on the door but did not announce their presence as police. Plaintiff exercised his rights to protect himself under the Second Amendment and opened the door with a gun in his hand. The officers discharged their weapons striking Plaintiff twice in the back as Plaintiff turned away from the door. At no time did Plaintiff threaten either officer with his gun or otherwise.

Subsequent to the shooting, Plaintiff was arrested on two charges of "menacing" under *Code of Ala. §13A-6-23*. The charges resulted from false allegations by the shooting officers that Plaintiff pointed his gun at one of the officers' head and that he took steps toward the officer. A jury returned a verdict in Plaintiff's favor on November 19, 2014, at the criminal trial on both of the menacing charges

Plaintiff seeks compensatory and punitive damages for violations of his civil rights including (a) Fourth Amendment claims for illegal seizure, excessive force and false arrest, (b) Second amendment claims for violating Plaintiff's right to bear a weapon in his own home to protect himself, (c) Fourteenth Amendment claims for violations of plaintiff's right to substantive due process and his liberty interest, and (d) failure of Defendants to implement constitutional policies and training which resulted in the near fatal police handling of this domestic call.

2

Plaintiff also seeks compensatory and punitive damages under state law for false arrest and malicious prosecution

### Parties

1.    Plaintiff incorporates each and every allegation above as if fully stated herein.

2.    Plaintiff, **Jeffrey Paul Howe** is a male citizen of the State of Alabama who was a competent adult at the time of the challenged actions ("Plaintiff" or "Howe").

3.    Defendant, **City of Enterprise**, is a municipal corporation in Enterprise, Alabama and which duly organized the Enterprise Police Department and the police department's policies and procedures governing the duties and actions of its police officers. ("the City" or "Enterprise")

4.    Defendant, **Berney Partridge** is an individual who on February 16, 2013, was a police officer for the City of Enterprise, Alabama, police department. He is sued in his individual capacity only.   ("Officer Partridge" or "Partridge")

5.    Defendant, **Thomas Arias** is an individual who on February 16, 2013, was a police officer for the City of Enterprise, Alabama, police department.   He is sued in his individual capacity only. ("Officer Arias" or "Arias")

6.    Defendant, **Chief Thomas D. Jones** is sued individually, in his supervisory capacity, and as a policy maker for action and inaction taken under color

3

of law in his capacity as Chief of Police for the Enterprise Police Department. ("Chief Jones" or "Jones")

7.    Defendant, **Chief Thomas D. Jones** is also sued in his official capacity as a nominal prospective injunctive relief defendant should injunctive relief be necessary.

8.    Defendant, **Thomas T. Braun** is sued individually, in his supervisory capacity, and as a policy maker for action and inaction taken under color of law in his capacity as the Patrol Commander for the Enterprise Police Department. ("Captain Braun" or "Braun")

9.    Defendant, **Lennis Darby** is sued individually, in his supervisory capacity, and as a policy maker for action and inaction taken under color of law in his capacity as the one who oversaw and supervised the Patrol Division of the Enterprise Police Department. ("Captain Darby" or "Darby")

10.    Defendant, **Jeffrey Spence** is sued individually, in his supervisory capacity, and as a policy maker for action and inaction taken under color of law in his capacity as supervisor of the Criminal Investigations Unit within the Enterprise Police Department. ("Captain Spence" or "Spence")

11.    Defendant, **Jason Anderson** is sued individually, in his supervisory capacity, and as a policy maker for action and inaction taken under color of law in his capacity as a shift commander with the Enterprise Police Department on the

4

night of February 16, 2013.  ("Lt. Anderson" or  "Anderson")

12.    Defendant, **Chris Hurley** is sued individually, in his supervisory capacity, and as a policy maker for action and inaction taken under color of law in his capacity as a supervisor with the Enterprise Police Department on or before February 16, 2013. ("Sgt. Hurley" or "Hurley').

13.    Defendant, **Richard Hauser** is sued individually, in his supervisory capacity, and as a policy maker for action and inaction taken under color of law in his capacity as a supervisor with the Enterprise Police Department on or before February 16, 2013. ("Sgt. Hauser" or "Hauser').

14.    Defendant, **Burford Roberts** was an investigator for the Enterprise Police Department on before February 16, 2013. He is sued in his individual capacity only. ("Investigator Roberts" or "Roberts").

15.    All of the Defendants described herein are sued individually for damages, and are sued individually and jointly, for proximately causing one or more deprivations of rights and injuries to Plaintiff.

### *Venue*

16.    A substantial part of the events or omissions giving rise to this claim occurred in Dale County, Alabama, in the Southern Division of the Middle District of the State of Alabama.

### 42 U.S.C. §§ 1983 and 1988, Constitution of the U.S., Common Law of the State of Alabama

17.     This is a civil action for money damages brought pursuant to:

a)     42 U.S.C. §§ 1983 and 1988;

b)     The Second, Fourth and Fourteenth Amendments to the United States Constitution, and

c)     The Common Law of the State of Alabama.

### Jurisdiction

18.     Plaintiff invokes jurisdictions pursuant to :

a)     28 U.S.C. 1331 and 1343, and

b)     This Court's supplemental jurisdiction under 28 U.S.C. §1367 to entertain claims arising under state law and because the facts of this case involved federal claims which occurred in Alabama and which part of this same case or controversy under Article III.

### Color of State Law

19.     At the time of all relevant events, all defendants were acting under color of state law, that is, they were acting under the color of the statutes, regulations, policies and customs of the State of Alabama and/or the City of Enterprise.

6

### *Facts Prior to the Shooting*

20.    Plaintiff incorporates each and every allegation in paragraphs 1 through 19 above as if fully stated herein.

21.    The underlying incident made the subject of this suit occurred at Plaintiff Howe's mobile home located at ███████████████████ in Enterprise, Alabama, on February 16, 2013 at approximately 3:52 am. Howe's home is located within the "Dogwood Acres" mobile home community which consists of approximately thirty mobile homes.

22.    At all times material to this suit, Mr. Howe lived at ████████ ██████████, with his wife, Vickie Howe.

23.    Early in the pre-dawn hours of February 16, 2013, Plaintiff Howe had an argument with his wife, Vickie Howe, at their home.  During the argument, Vicki Howe became upset and decided to leave in her car to go to her son, Michael Thorpe's, house in another community to spend the night. Vickie Howe left the residence after 3 a.m. and drove away in her gold Buick Regal. Vickie Howe had no further contact or communication with Plaintiff Howe after she departed the marital residence in her vehicle that night.

24.    Vicki Howe called her son, Michael Thorpe, after she left her house and informed Mr. Thorpe that she had been arguing with Howe and that she was in her car and planned to drive to Thorpe's house to spend the night.  However, the

cellular service to her phone was disrupted during the call and the call ended abruptly before Thorpe was able to discuss with Ms. Howe her condition, her state of mind, and whether it was safe for her to make the trip to his home in Clayhatchee which was approximately 20 miles away.

25.    Mr. Thorpe called the Enterprise police department via a 911 call.

26.    Vernal Beal, a dispatch communications employee for the Enterprise police department, received the 911 call from Thorpe who reported to Ms. Beal that Vicki Howe had been involved in a domestic disturbance with her husband, Paul Howe, at their Dogwood Acres address, and that Vicki Howe reportedly left the house in her gold Buick Regal.

27.    During the 911 call,  Mr. Thorpe informed Ms. Beal that Paul Howe may have weapons in his house.

28.    After the 911 call with Thorpe, Ms. Beal dispatched a call on the Enterprise police radio advising of a domestic call at the Howe's Dogwood Acres address. Specifically, Ms. Beal's police dispatch communication described the call as a "signal 11" which referenced a routine "domestic disturbance" at that address. According to testimony of both defendant Partridge and Vernell Beal at Howe's criminal trial on the criminal "menacing" charges, (see the certified trial transcript from Howe's criminal trial - *State of Alabama vs. Jeffrey Paul Howe, Circuit Court of Dale County, Alabama, CC-2013-00357 and CC-2013-00358*) (transcript pp.

31-32,72)(attached as Exhibit "A")), a signal 11 domestic call, without more, excluded the use of weapons

29.     Officers Partridge, Arias, and Hauser each responded to Ms. Beal's "signal 11" call. As they were en route to the call, one of the officers asked if there were weapons and Beal advised that there was a report of weapons "in the house".

30.     Once they located plaintiff's home, Partridge and Arias parked their respective vehicles on the roadway in front of the mobile home next door to Paul Howe's home. Sgt. Houser came toward the Howe residence from the other direction and parked his vehicle at or near the front of the mobile home on the other side of the Howe residence.

31.     None of the police officers that responded to this domestic disturbance engaged their police vehicle emergency lights and/or siren.

32.     As of the time that Partridge, Arias and Hauser parked their police vehicles in front of the Howe's neighbors' homes, Mr. Howe was seated on his sofa in his mobile home completely unaware that (a) Michael Thorpe called 911 from his home in Clayhatchee, Alabama; that (b) Michael Thorpe reported to 911 that a domestic disturbance occurred at the Howe residence that night; and that (c) police officers from Enterprise P.D. had been dispatched to his home.

### *Events of the Shooting*

33.     Officers Partridge and Arias exited their vehicles and walked toward

9

Howe's mobile home which sat off the roadway and up a slight hill. The dash-cam video obtained from officer Arias' police vehicle showed that Partridge walked a few steps ahead of Officer Arias and that as the officers headed toward Howe's residence, both officers reached with their right hands to unfasten their handguns from their holsters.

34.     Partridge and Arias walked toward Howe's house from the front. In order to access the front door (which was situated toward the middle of the home and was several feet above the ground), Partridge ascended approximately eight to ten steps which then led to a wood-deck front porch. The front door was approximately ten feet across the porch from the top of the stairs.

35.     Once Partridge ascended the stairs and stepped onto the front porch, he walked across the porch and to the right side of the door frame and leaned against the wall to the right of the front door. Arias stopped midway up the stairs several steps from the top of the stairs. Upon information and belief, both Partridge and removed their duty weapons from their holsters.

36.     The porch light situated near the front door was turned on.

37.     Partridge knocked on Mr. Howe's front door. Neither Partridge nor Arias announced their identities, nor did they announce that they were with the police. In fact, neither officer said anything at all.

38.     At the time that Partridge knocked on Plaintiff's front door at

10

approximately 3:52 a.m., Howe did not know that the police had been contacted, that law enforcement were dispatched to his residence, or that the police were knocking on his door.

39.     In lieu of the extremely late hour, Howe's knowledge of recent criminal activity in the Dogwood Acres neighborhood, and Howe's lack of knowledge of whom was knocking at his door, Plaintiff exercised his Second Amendment right to protect himself by carrying his handgun with him to answer the door.

40.     Mr. Howe opened the front door to his home with his left hand while holding his pistol in his right hand pointed at the floor. When he opened the door, Howe suddenly saw Partridge's gun pointed at his head from just outside the door frame to Howe's left. Howe also observed Arias on the stairs pointing his gun at Howe. Howe immediately felt in fear for his life and turned his body away from the door to protect himself. At that time Partridge and Arias discharged their weapons several times striking Howe twice in the back.

41.     Audio recordings of this event establish that neither Partridge nor Arias issued any warnings prior to firing their weapons at Howe. The audio also establishes that the shots were fired almost immediately after Howe opened the door. It is believed that Partridge and Arias fired seven to eight   rounds into Howe's home in their attempts to shoot Mr. Howe. Partridge's rounds were fired through the exterior wall of the home beside the door frame before striking Mr. Howe twice in

the lower back.

42.    Howe was facing away from the door when he was shot twice in the back and he fell forward toward the interior of his living room to the floor next to a coffee table. After he fell forward and onto his living room floor, Howe placed his gun on the coffee table and Arias and Partridge came into Howe's home.

43.    Arias placed his knee onto Howe's back and handcuffed Howe's hands behind his back.   Sgt. Hauser entered the home with Arias and Partridge and these officers cleared the house to make certain no one else was there, and then medical assistance was called for Howe.

44.    Emergency medical personnel arrived on the scene and transported Howe to Medical Center Enterprise and then to Flowers Hospital for emergency surgery to treat his gunshot wounds.

### *Events of the Shooting Investigation*

45.    Shortly after the shooting occurred, Lt. Anderson arrived on scene and he and Sgt. Hauser taped off the area and began their investigation of what occurred. The Alabama Bureau of Investigation (ABI) was contacted and ABI investigators were dispatched to Howe's residence to investigate the shooting. Defendants Sgt. Hurley and Detective Roberts, both of the Enterprise PD, also investigated the shooting.

46.    The statements given by Arias and Partridge to the ABI, Hurley and

Roberts contained numerous inconsistencies about the shooting and how Howe allegedly threatened Partridge with his gun after he opened the door. Because it was known that Partridge and Arias had fired their weapons without warning almost immediately after the door was opened and shot Howe in the back, and because Hurley, Roberts, Partridge and Arias knew that Partridge and Arias may face criminal and civil penalties for the unreasonable use of deadly force in this shooting, the defendants Hurley, Roberts, Partridge, Arias, Hauser, Anderson, Spence, Darby, Braun, and Jones, and other Enterprise Police personnel who participated in the post-shooting investigation,  and who also participated in securing a warrant for Howe's arrest,  agreed to a false version of events in which Plaintiff Howe was named as the aggressor who threatened Partridge with serious harm with his gun, as opposed to the fact that Arias and Partridge were the aggressors. To the point, these defendants ignored the fact that Arias and Partridge met Howe at his door at approximately 4:00 a.m. unannounced with guns drawn and pointed at him before they began shooting at him without warning and without justification.

47.    Defendants Roberts, Hurley, Hauser, Anderson, Partridge and Arias, and probably others, prepared false written statements or false written reports.

48.    As part of the described conspiracy to submit a false version of the events which caused the shooting, defendant Roberts, who was assigned to investigate, ignored information provided during the investigation that Partridge

13

and Arias were the aggressors and that Partridge's description of the incident was vastly different from Arias' description of pertinent facts, and chose to adopt Partridge's contradictory and self-serving narrative that Howe not only pointed a gun at Partridge's head, but also stepped aggressively toward Partridge, and that Arias and Partridge gave several warnings to Howe to drop his weapon before they began shooting. All of these facts were untrue and were known to be untrue to Roberts at the time he submitted his reports based on the evidence of the investigation.

49.     All of the individual Enterprise Police Department defendants named in this case, in order to cover up the fact that Partridge and Arias were the aggressors and in order to protect Partridge and Arias from potential criminal and civil liability for unreasonable using deadly force in this shooting, conspired and agreed to support the false narrative in which Howe was the aggressor and Partridge was the victim, and each made written and/or oral statements supporting this false narrative, and/or ignored evidence that contradicted this false narrative.

50.     All defendants agreed and conspired to cover up the fact that Howe did not threaten either Partridge or Arias before the officers began shooting at him.

### Events of the False Arrest and Malicious Prosecution

51.     Howe was discharged from Flowers Hospital a few days after the shooting and was immediately arrested on two charges of "*menacing*" pursuant to

14

information supplied by defendants Partridge, Arias, Roberts and pursuant to *Code of Ala. §13A-6-23.*

52.    Based on his arrest for the menacing charges, Plaintiff Howe was transported from Flowers Hospital to the Dale County jail in Ozark, Alabama, where he remained until he bonded out on both criminal charges on February 21, 2013.

53.    As a result of his arrest and charges for menacing, Plaintiff Howe was caused to retain attorneys at his own cost to defend him against the menacing charges brought against him by Officer Partridge and Officer Arias.

54.    The State of Alabama prosecuted Jeffrey Paul Howe in the Circuit Court of Dale County, Alabama, case numbers CC-2013-00357 and CC-2013-00358, at a trial by jury which occurred on November 19, 2014, before the Honorable Kenneth Quattlebaum, Circuit Judge.   At the conclusion of the jury trial on both of these criminal cases (which were consolidated for trial purposes), the jury found that Plaintiff Howe was not guilty of menacing in both the Arias and Partridge cases, and Judge Quattlebaum thereafter adjudged Plaintiff Howe not guilty and entered a judgment of not guilty thereby discharging Plaintiff Howe from both cases against him for menacing.

**Events Supporting the Second Amendment Violations**

55.    The Second Amendment to the United States Constitution ("2nd Amendment") protects the right of the people to keep and bear arms. All rights

15

arising from the Second Amendment belong to the individual and the right for an individual to possess firearms is considered a fundamental right, especially for the purpose of self-defense in the home.

56.    Howe lawfully exercised his Second Amendment rights on this occasion at his home, the place where the defense of self, family and property is most acute.

57.    It was reasonable, and in fact highly foreseeable, that Howe would answer the door on this occasion with a firearm in his hand. More specifically, when Partridge and Arias chose the tactical approach of making a clandestine and unannounced presentation at Howe's front door at 3:52 am, Partridge and Arias were aware of the dispatcher report that Howe had weapons in the house, and they also knew the following:

a.    Weapons were not reported as being involved in the domestic disturbance;

b.    Howe was not considered to be dangerous or a threat to the officers;

c.    Howe was not suspected of having committed a crime or of possessing evidence of a crime;

d.    Howe would likely seek to protect himself by carrying a weapon to the door after hearing unexpected knocking at such a late hour;

e.    Howe would not have knowledge of a law enforcement presence at his

door, especially since Arias and Partridge failed to announce and identify themselves as police when they knocked on Howe's door;   and

f.  Arias and Partridge created a highly foreseeable risk of serious injury and harm to Howe for exercising his Second Amendment rights by having their guns drawn when Howe opened the door.

g.  Partridge and Arias saw Howe exercising his lawful right to possess a gun when he opened his door, and even though Howe did not threaten either Arias or Partridge with his gun, Arias and Partridge fired their weapons at Howe without warning repeatedly as he turned away to protect himself.

h.  Partridge and Arias's actions of shooting Howe for lawfully exercising his Second Amendment right to possess a firearm for his own protection in his own home were deliberately indifferent to Howe's Second Amendment right to bear arms in defense of his home, his Fourth Amendment rights to be free from illegal seizure and the unreasonable use of excessive force, and his Fourteenth Amendment rights to the due process of law.

## Events Supporting Monell Liability of City, Chief Jones and the Supervisory Defendants

### *Policy or Custom*

58.    The City and Chief Jones were final policymakers with respect to all law enforcement decisions made within the Enterprise Police Department.

17

59.    The City and Chief Jones adopted a policy or custom where for EPD police officers responding to routine domestic calls attempted to avoid detection when they approached the home, and they would not announce their identity as police when knocking on an individual's door on routine domestic calls. This policy or custom (hereafter referred to as the "*no-announce* policy") was utilized by EPD officers even late at night when individuals were likely asleep and would be alarmed to hear an unexpected knock on the door.

60.    The City and Chief Jones instructed EPD officers, including Arias and Partridge, to follow the no-announce policy on all domestic calls, including calls (a) where there was no reason to suspect that individuals in the home were considered armed, dangerous or a potential threat to the officers; (b) where there was no probable cause to suspect that individuals at the home committed a crime; and (c) where there was no probable cause to suspect that evidence of a crime may be destroyed.

61.    The City and Chief Jones utilized this no-announce policy on all domestic calls, including late night calls where it was highly predictable that individuals would respond to an unexpected knock on the door by lawfully exercising their Second Amendment right to carry a firearm to open the door.

### *Training*

62.    The defendants, Chief Jones, Captain Brown, Captain Darby, Captain

18

Spence, Lt. Anderson, Sgt. Hurley and Sgt. Hauser (the "Supervisory defendants") trained EPD officers, including Arias and Partridge, to follow a no-announce approach to domestic calls, even late at night when individuals were likely asleep and would be alarmed to hear an unexpected knock on the door.

63.    The Supervisory defendants trained EPD officers, including Arias and Partridge, to follow a no-announce approach to domestic calls, including late night calls where it was highly predictable that individuals would respond to an unexpected knock on the door by lawfully exercising their Second Amendment right to carry a firearm to open the door.

64.    The Supervisory defendants trained EPD officers, including Arias and Partridge, to utilize a no-announce approach to domestic calls, including calls (a) where there was no reason to suspect that individuals in the home were considered armed, dangerous or a potential threat to the officers; (b) where there was no probable cause to suspect that individuals at the home committed a crime; and (c) where there was no probable cause to suspect that evidence of a crime may be destroyed.

### Inherent Safety Risk and Danger of the No-Announce
### Policy, Custom and Training

65.    The City, Chief Jones and the Supervisory Defendants were aware before February 16, 2013, that EPD officers, including Arias and Partridge, typically

19

responded to routine domestic calls by implementing the no-announce policy, custom and/or training, and that they often responded to domestic calls by showing up at the front door on non-violent, non-threatening individuals with their guns displayed.

66.    During the trial testimony of Partridge at Howe's criminal trial on November 19, 2014, and according to the certified trial transcript from Howe's criminal trial, (*State of Alabama vs. Jeffrey Paul Howe, Circuit Court of Dale County, Alabama, CC-2013-00357 and CC-2013-00358*) (transcript p.10, ln 15-25), Partridge testified that he and Arias parked away from Howe's to avoid detection on this domestic call according to "[*Enterprise Police Department] policy*". Partridge testified that on domestic calls the policy and training for EPD officers is to "*park down the street and walk in*", (Ex. "A" at pp. 10-11). Regarding whether Partridge or Arias announced they were with the police when Partridge knocked, Partridge testified as follows:

(p.15, ln 17-23)

…

Q.    "*…So when you knocked on the door, did you announce yourself?*

A.    *No we did not.*

Q.    *And why not?*

A.    *Well, there's several reasons. We don't announce in this situation. I*

20

*mean, he had the opportunity to ask who was there.*" (Ex. "A" at p. 15)

68.    The City, Chief Jones and the Supervisory defendants implemented a no-announce policy, custom and/or training of EPD police officers handling routine domestic calls to make clandestine approaches to homes and knock but not announce even when:

(a) it was late at night;

(b) persons were likely to be alarmed at unexpected knocks on the door;

(c) persons were likely to lawfully exercise their Second Amendment right to carry a gun for protection to the door;

(d) the call did not involve dangerous, violent or threatening individuals; and

(e) the call did not involve probable cause to suspect individuals in the home committed any crime or would destroy evidence of a crime,

This policy, custom and/or training created serious safety risks for officers in the line of duty and private citizens in their homes since the policy, custom and training unreasonably ignored the highly predictable consequences inherent in the following:

a.  police secreting their identity while knocking at an individual's door during a routine domestic call,

b.  thereby unreasonably alarming the individual at the home,

c.  who then lawfully answers the door with a gun for his own protection, and

21

d.  Who then is suddenly faced with police officers at the door displaying their guns

e.  who, in turn, foreseeably react to seeing a gun in the hands of the person at the door and shoot at the individual.

69.    The no-announce policy, custom and training, and the highly foreseeable dangers it caused to officers and the public as described in paragraphs 59 -68 above, when carried out by officers with guns at the ready, like Arias and Partridge, presented serious safety risks to the officers and the public particularly if officers were not trained of the considerable likelihood that a non-threatening person awakened in his home late at night by a no-announce knock at the door would experience a sense of alarm, danger and fear, and would likely lawfully carry a weapon for protection   to answer the door.

70.    The City, Chief Jones and the Supervisory defendants were aware that Arias and Partridge would likely violate Howe's Second, Fourth and Fourteenth Amendment rights during a routine domestic call since each of these defendants knew that when a person lawfully answers his door with a gun in his hand because he is unaware of a police presence and because his is concerned for his safety and protection, police officers - particularly those with their guns at the ready - will predictably aim their guns at the person creating a highly dangerous situation for the officers and the person lawfully standing with a gun in his hand in his own home.

22

71.    The City, Chief Jones and the Supervisory defendants were aware that Arias and Partridge would likely violate Howe's Second, Fourth and Fourteenth Amendment rights during a routine domestic call since the foregoing established policy, custom and training by the City, Chief Jones and the Supervisory defendants caused EPD officers under their control and supervision, including Arias and Partridge, to do as follows:

    a.   believe that they were justified to use excessive force in situations unnecessarily made inherently dangerous by their own conduct of not announcing their presence when knocking on doors late at night,

    b.   ignore the public's right to bear arms in defense of their homes under the Second Amendment, and

    c.   consider an individual's lawful exercise of his Second Amendment rights as a justification to use deadly force when the officers were not actually threatened with immediate serious harm, and

    d.   all with the foreseeable result that the officers would violate the constitutional rights of Plaintiff and other similarly-situated citizens.

72.    There is a direct causal link between the constitutional deprivations suffered by Plaintiff as described throughout this complaint and the unconstitutional policy, custom and/or inadequate training by the City, Chief Jones and the Supervisory defendants.

23

## Injuries and Damages

73.     As a result of the conduct of the defendants, Plaintiff has been shot and injured, undergone extensive medical procedures to treat his injuries, suffered pain and suffering, suffered physical and emotional injuries and damages, including embarrassment and humiliation, has lost income from his job, and has been caused to incur substantial medical and legal bills and other expenses.

74.     The individual defendants acted with deliberate indifference, with malice and/or with reckless indifference to plaintiff's constitutional rights.

## COUNT ONE

### *42 .S.C. §1983- Illegal Seizure*

75.     Plaintiff incorporates each and every allegation in paragraphs 1 through 74 above as if fully stated herein.

76.     On or about February 16, 2013, defendant Partridge and Defendant Arias, acting under color of law within the meaning of 42 U.S.C. §1983, illegally seized plaintiff without probable cause and without any basis for doing so.  These individual defendants acted with deliberate indifference to Plaintiff's constitutional rights and did thereby deprived plaintiff of his rights under the Fourth and Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. §1983. Specifically, Partridge and Arias violated plaintiff's right to be free from unlawful searches and seizures.

24

77.    The unconstitutional "seizure" of Plaintiff by Arias and Partridge as described above proximately caused Plaintiff to suffer injuries and damages as discussed herein, and Arias and Partridge are liable to Plaintiff for his injuries and damages.

78.    As explained throughout the above facts, and with particularity at paragraphs 59 through 72, the City, Chief Jones and the supervisory defendants established a policy, custom and training to EPD officers, including Arias and Partridge, regarding the EPD's no-announce policy during domestic calls which created significant safety risks and threats to officer and the public, including Plaintiff Howe, and these defendants knew to a moral certainty that following this policy, custom and training would result in:

a.    the usual and recurring situations where the safety of officers and the public, including Howe, would be in jeopardy, and

b.    the constitutional rights of individuals, including Plaintiff, being violated.

Therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff as well.

79.    The City, Chief Jones and Supervisory defendants' implementation and perpetuation of the no-announce policy was consciously implemented and perpetuated by these defendants through official policy, custom and training and the

defendants were aware of and deliberately indifferent to the risk of violating the Second, Fourth and Fourteenth Amendment rights of the public, including Plaintiff, by the no-announce policy, custom and/or training's deficiencies, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff.

80.    At the time that Plaintiff Howe was shot by Arias and Partridge in his own home on February 16, 2013, the need for a different policy, custom and/or training was so obvious and the inadequacies of the policy, custom and/or training so likely to result in the violation of a person, including Plaintiff's, constitutional rights that the City, Chief Jones and the Supervisory defendants who trained EPD officers, including Arias and Partridge, were deliberately indifferent to the need, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff.

81.    The deliberate indifference to Plaintiff's constitutional rights described herein in this complaint by Arias, Partridge, the City, Chief Jones, and the Supervisory defendants proximately caused Howe to suffer deprivations of his Second, Fourth, and Fourteenth Amendment rights, as well as his injuries and damages described above at paragraph 73.

## COUNT TWO

### *42. U.S.C. §1983 – False Arrest*

82.    Plaintiff incorporates each and every allegation in paragraphs 1

26

through 74 above as if fully stated herein.

83.    On or about February 21, 2013, defendants, Partridge, Arias, Anderson, Hauser, Roberts and Hurley acting under the color of law within the meaning of 42 U.S.C. §1983, arrested plaintiff without a warrant and without probable cause, assisted in the false arrest of plaintiff, conspired to arrest plaintiff, and/or failed to stop the false arrest of plaintiff despite knowledge and an opportunity to do so. These individuals did thereby deprive plaintiff of his rights under the Fourth and Fourteenth Amendment to Constitution of the United States in violation of 42 U.S.C. §1983.   Specifically, they violated plaintiff's right to be free from unlawful searches and seizures, and violated Plaintiff's constitutional right to liberty.

84.    These constitutional deprivations caused to Plaintiff by defendants, Partridge, Arias, Anderson, Hauser, Roberts and Hurley's false arrest of Plaintiff caused Howe to suffer damages described above at paragraph 73.

## COUNT THREE

### *42 .S.C. §1983-Excessive Force*

85.    Plaintiff incorporates each and every allegation in paragraphs 1 through 74 above as if fully stated herein.

86.    On or about February 16, 2013, defendants, Partridge and Arias intentionally exercised deadly force by shooting their guns at plaintiff without any objectively reasonable justification to do so.

87.    Arias and Partridge fired their weapons at Howe when he opened his door and while he was in his own home without any probable cause to believe that Howe posed an immediate threat of serious physical harm to either of the officers, and without giving Howe any warning before they shot him.

88.    Defendants did thereby deprive the plaintiff of his rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. §1983. Specifically, they violated plaintiff's right to be free from excessive force, including the use of deadly force, including the unreasonable use of deadly force.

89.    As explained above, the City, Chief Jones and the supervisory defendants established a policy, custom and training to EPD officers, including Arias and Partridge, regarding the EPD's no-announce policy during domestic calls which created significant safety risks and threats to officer and the public, including Plaintiff Howe, and these defendants knew to a moral certainty that following this policy, custom and training would result in (a) the usual and recurring situations where the safety of officers and the public, including Howe, would be in jeopardy, and (2) the constitutional rights of individuals, including Plaintiff, being violated, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff for Arias and Partridge's unreasonable use of excessive force as well.

90.    The City, Chief Jones and Supervisory defendants' implementation and perpetuation of the no-announce policy was consciously implemented and

28

perpetuated by these defendants through official policy, custom and training and the defendants were aware of and deliberately indifferent to the risk of violating the Second, Fourth and Fourteenth Amendment rights of the public, including Plaintiff, by the no-announce policy, custom and/or training's deficiencies, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff as well.

91.    At the time that Plaintiff Howe was shot by Arias and Partridge in his own home on February 16, 2013, the need for a different policy, custom and/or training was so obvious and the inadequacies of the policy, custom and/or training so likely to result in the violation of a person, including Plaintiff's, constitutional rights that the City, Chief Jones and the Supervisory defendants who trained EPD officers, including Arias and Partridge, were deliberately indifferent to the need, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff as well.

92.    The deliberate indifference to Plaintiff's constitutional rights described herein in this complaint by Arias, Partridge, the City, Chief Jones, and the Supervisory defendants proximately caused Howe to suffer deprivations of his Second, Fourth, and Fourteenth Amendment rights, including his right to be free from the objectively unreasonable use of deadly force against him, as well as his injuries and damages described above.

## COUNT FOUR

### *42. U.S. C. §1983- Second Amendment Violations*

93.    Plaintiff incorporates each and every allegation in paragraphs 1 through 74 above as if fully stated herein, including paragraphs 54 through 58, for purposes of his allegations under 42 U.S.C. §1983 for liability against the defendants for constitutional deprivations under the Second Amendment of the U.S. Constitution.

94.    Partridge and Arias's actions of shooting Howe for lawfully exercising his 2nd Amendment right to possess a firearm for his own protection in his own home were deliberately indifferent to Howe's 2nd Amendment right to bear arms in defense of his home, his 4th Amendment rights to be free from illegal seizure and the unreasonable use of excessive force, and his 14th Amendment liberty interests and his rights to the due process of law.

95.    As explained above, the City, Chief Jones and the supervisory defendants established a policy, custom and training to EPD officers, including Arias and Partridge, regarding the EPD's no-announce policy during domestic calls which created significant safety risks and threats to officer and the public, including Plaintiff Howe, and these defendants knew to a moral certainty that following this policy, custom and training would result in (a) the usual and recurring situations where the safety of officers and the public, including Howe, would be in jeopardy

30

for lawfully exercising his Second Amendment rights to arm himself for protection in his home, and (2) the constitutional rights of individuals, including Plaintiff and his Second Amendment rights, being violated, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff as well.

96.     The City, Chief Jones and Supervisory defendants' implementation and perpetuation of the no-announce policy was consciously implemented and perpetuated by these defendants through official policy, custom and training and the defendants were aware of and deliberately indifferent to the risk of violating the Second, Fourth and Fourteenth Amendment rights of the public, including Plaintiff, by the no-announce policy, custom and/or training's deficiencies, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff as well.

97.     At the time that Plaintiff Howe was shot by Arias and Partridge in his own home on February 16, 2013, the need for a different policy, custom and/or training was so obvious and the inadequacies of the policy, custom and/or training so likely to result in the violation of a person, including Plaintiff's, constitutional rights, including his Second Amendment rights, that the City, Chief Jones and the Supervisory defendants who trained EPD officers, including Arias and Partridge, were deliberately indifferent to the need, and therefore, the City, Chief Jones and the Supervisory defendants are liable to the plaintiff as well.

98.     The deliberate indifference to Plaintiff's constitutional rights described

herein in this complaint by Arias, Partridge, the City, Chief Jones, and the Supervisory defendants proximately caused Howe to suffer deprivations of his Second, Fourth, and Fourteenth Amendment rights, as well as his injuries and damages described above.

## COUNT FIVE

### 42 U.S.C. §1983- Malicious Prosecution

99.     Plaintiff incorporates each and every allegation in paragraphs 1 through 74 above as if fully stated herein.

100.     After the plaintiff's arrest on or about February 21, 2013, defendants, Partridge, Arias, Roberts, Hurley, Hauser and Jones, acting under color of state law within the meaning of 42 U.S.C. §1983, maliciously prosecuted plaintiff without probable cause and/or conspired to do so, thereby depriving plaintiff of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983.   Specifically, they violated plaintiff's right to be free from unlawful seizure.

101.     Specifically, these defendants provided false oral and/or written reports in support of the charges against plaintiff and failed to provide the prosecutor's office with exculpatory information.

102.     Defendants, Partridge and Arias were complaining witnesses.

103.     Defendants, Roberts and Hurley obtained the warrants.

104.    These defendants conspired and agreed to pursue the wrongful prosecution of plaintiff as a defense to plaintiff's civil suit.

105.    Plaintiff's continuing criminal prosecution was a natural consequence of defendant's conduct.

106.    Defendant, Chief Jones became aware of the malicious prosecution of plaintiff and failed to take timely steps to terminate the prosecution.

## COUNT SIX

### State Law Claim- malicious prosecution

107.    Plaintiff incorporates each and every allegation in paragraphs 1 through 74 above as if fully stated herein including paragraphs 50 through 53, for purposes of his allegations under Alabama law for liability against Defendants' Partridge, Arias, Roberts, Hurley and Hauser, for pursuing a malicious prosecution against plaintiff arising out of the events at plaintiff's home in the early morning hours of February 16, 2013.

108.    As described more particularly in paragraphs 50 through 54 above, Howe was arrested on two charges of "menacing" pursuant to information supplied by Defendants, Partridge, Arias, Roberts and Hauser and pursuant to Code of Ala. §13-A-6-23, and a judicial proceeding brought by the State of Alabama to prosecute Mr. Howe transpired in the Circuit Court of Dale County, Alabama case numbers CC-2013-0357 and CC-2013-0358, at a trial by jury which occurred on November

33

19, 2014, before the Honorable Kenneth Quattlebaum, Circuit Judge.

109.    The charges of menacing and the prosecution on those charges against plaintiff was instigated by the defendants for want of probable cause and/or based on false allegations by the defendants during the investigation after the shooting and which lead to the warrant and complaint for the menacing charges against plaintiff, and malice by the defendants for bringing charges against plaintiff for want of probable cause and/or based on false allegations made by the defendants and during the post-shooting investigation, and the termination of the judicial proceeding against plaintiff in a manner that was favorable to the plaintiff and that the jury found in his favor, judgment was entered in his favor on the verdict, and the charges against him were dismissed at trial.

110.    As a proximate result of the malicious prosecution described in this complaint, Plaintiff suffered damages in the form of embarrassment, humiliation, worry, anxiety, mental anguish and legal costs to defend him.

### *Other Matters*

111.    At all times prior to the incident made this subject of this suit, the law was clearly established that the Howe enjoyed the rights and protections under the Second, Fourth and Fourteenth Amendments as described throughout this complaint, and the defendants were aware that Howe enjoyed those rights and protections as of the time Arias and Partridge shot him at his doorway on February

16, 2013.

112.    All conditions precedent to the bringing of this suit has occurred.

### *Relief Sought*

113.    As relief plaintiff seeks the following:

a)    That plaintiff be awarded such compensatory damages as a jury shall determine form the evidence plaintiff is entitled to recover;

b)    That plaintiff be awarded such punitive damages against defendants as a jury shall determine from the evidence plaintiff is entitled to recover;

c)    That plaintiff be awarded pre-judgment and post-judgment interest at the highest rates allowed by law;

d)    That plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

e)    That plaintiff be awarded an amount to compensate plaintiff for any adverse tax consequences as result of a favorable judgment; and

f)    That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

Dated on this the 13th day of February, 2015

Respectfully submitted,

ALAN B. LASSETER
(ASB-0854-S82A) (LAS007)

35

Todd Derrick
(ASB-8099-R79R)(DER006)

OF COUNSEL:

LASSETER LAW FIRM, P.C.
19 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
Telephone:  (205)322-1411
Facsimile:  (205)328-1411
alan@lasseterlaw.com

Hall Derrick & Associates
360 North Oates Street
Dothan, AL 36303
Telephone:  (334)793-3610
tderricklaw@gmail.com

## JURY DEMAND

Plaintiff hereby demands a struck jury for the trial in this cause.

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th$^{day}$ of, February I served a copy of the foregoing on the following via certified mail via Clerk of Court.

**CITY OF ENTERPRISE**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

**BERNEY PARTRIDGE**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

**THOMAS ARIAS**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

**THOMAS D. JONES**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

**JASON ANDERSON**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

**THOMAS T. BRAUN**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

**JEFFREY SPENCE**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

**LENNIS DARBY**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**


**CHRIS HURLEY**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**


**RICHARD HAUSER**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**


**BURFORD ROBERTS**
**501 S. MAIN STREET**
**ENTERPRISE, AL 36330**

ALAN B. LASSETER
(ASB-0854-S82A)