IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFFREY PAUL HOWE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15cv113-ECM |
| | ) | [WO] |
| CITY OF ENTERPRISE, AL., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and O R D E R**

Now pending before the court is the Recommendation of the Magistrate Judge (doc. 74) which recommends that the defendants' motion to dismiss the second amended complaint (doc. 55) be granted in part and denied in part. On October 22, 2018, the plaintiff filed objections to the Recommendation (doc. 79) limited "solely to the court's recommendation for dismissal of [his] federal claims for excessive force under the Fourth Amendment against [defendants] Arias and Partridge (count two)." (*Id*. at 2). The defendants have filed a response to the plaintiff's objections. (Doc. 82). Consequently, the Court will only specifically address in this memorandum opinion the plaintiff's objections to dismissal of count two of the second amended complaint.

A district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 18 U.S.C. § 636(b)(1). The court has conducted an independent and *de novo* review of the Recommendation as a whole as well as those portions to which objections have been made. For the reasons that follow, the plaintiff's objections are due to be overruled and the Recommendation adopted.

1

## DISCUSSION

In count two, the plaintiff alleges that "defendants, (sic) Partridge and Arias intentionally exercised deadly force by shooting their guns at plaintiff without any objectively reasonable justification to do so." (Doc. 51 at 27-28, ¶ 119). The Magistrate Judge concluded that defendants Arias and Partridge were entitled to qualified immunity on this count because the plaintiff had "failed to plead facts that plausibly establish that the officers committed a constitutional violation." (Doc. 74 at 57). The Magistrate Judge also concluded that even if the plaintiff had alleged sufficient facts to establish a constitutional violation, the defendants were still entitled to qualified immunity because "the plaintiff has failed to meet his burden of demonstrating that the officers violated a right that was clearly established on the date in question." (*Id.*)

A decision about qualified immunity is "completely separate from the merits of the action" and is decided by the Court because qualified immunity is not merely a defense to liability but rather immunity from suit *Plumhoff v. Rickard*, 572 U.S. 765, 771-72 (2014); *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

> Entitlement to qualified immunity is for the court to decide as a matter of law. Specifically, a court considering a defendant's claim of qualified immunity must address the following question of law:
>
>> [W]hether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

> *Mitchell*, 472 U.S. at 528, 105 S.Ct. 2806; *see also Harlow*, 457 U.S. at 818, 102 S.Ct. 2727 ("[T]he judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996) ("Qualified immunity is a legal issue to be decided by the court...."); *Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992) ("The law is now clear ... that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury."); *Hudgins v. City of Ashburn*, 890 F.2d 396, 403 (11th Cir. 1989) ("[T]he availability of qualified immunity necessarily is a question of law.").

*Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018). *See also, Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) ("In deciding whether an officer is entitled to summary judgment based on qualified immunity, the question of whether the force used by the officer in the course of an arrest is excessive is a "'pure question of law,'" decided by the court." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Scott* [*v. Harris*], 550 U.S. [372,] [] 381 n.8, 127 S.Ct. [1769,] [] 1776 n.8)).

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). *See also, Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007). To receive qualified immunity, the defendants must first demonstrate that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. *Cottone,* 326 F.3d at 1357; *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that defendants Arias and Partridge were acting within the course and scope of their discretionary authority during their encounter with the plaintiff. Thus, the burden shifts to

the plaintiff to demonstrate that the defendants are not entitled to qualified immunity. *Cottone*, 326 F.3d at 1358.

To satisfy his burden, the plaintiff must show two things: (1) that the defendants committed a constitutional violation, and (2) that the constitutional right the defendants violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City and County of San Francisco, Ca. v. Sheehan*, --- U.S. —, —, 135 S.Ct. 1765, 1774 (2015) (internal citations omitted).

> "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he was doing violates that right." *Ibid*. (brackets and internal quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. —, —, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*., at —, 131 S.Ct. at 2083.

*Taylor v. Barkes*, --- U.S. —, —, 135 S.Ct. 2042, 2044 (2015). "If the law is not clearly established, then the court should dismiss the case against the government official." *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015).

The plaintiff first argues that the Magistrate Judge erred in finding that he had not stated a plausible constitutional claim under the Fourth Amendment when she incorrectly assumed facts that were not included in the second amended complaint. Specifically, the plaintiff complains that the Magistrate Judge made a "judicial leap into the jury's fact-finding role." (Doc. 79 at 8). The plaintiff objects to the Magistrate Judge's finding that

4

he was a threat to the officers because he opened the door to his residence with a gun in his hand. The plaintiff further argues that in considering the facts of this case, "the court ignored the plain reality that Arias and Partridge could not "reasonably" have considered Plaintiff as a threat when he answered the door with a gun pointed at the floor."[1]

The plaintiff misconstrues the Magistrate Judge's conclusions. The Magistrate Judge found that

> **it would not be unreasonable** for an officer in Arias' and Partridge's position to believe that his or her life was in danger when the plaintiff opened the door with a gun – and for that belief to intensify once plaintiff turned back into the home – and, thus, to take immediate action in self-defense.

(Doc. 74 at 52) (emphasis added).

Thus, the Magistrate Judge did not determine as a matter of fact or law that the plaintiff was a threat to the officers. The standard is not whether the plaintiff was a threat to the officers, but as the Magistrate Judge appropriately considered, whether a reasonable officer would have believed that the plaintiff posed a threat of serious physical harm to the officers. *Shaw v. City of Selma*, 884 F.3d 1093, 1099 (11th Cir. 2018). It is not the plaintiff's subjective motivation or intent imposed by hindsight, but what a reasonable officer objectively would believe in the split-second situation that guides the Court's decision.

---

[1] The plaintiff attempts to blame the officers for creating the situation in which they were "alarmed" because he answered the door with a gun, but this argument misses the mark. Relying on the Second Amendment, the plaintiff asserts that he had the right to bear arms in his own home. That right is not disputed, nor is it at issue in this case. The plaintiff does not point to, and the court has not found any, cases which in any way support the plaintiff's position that the Second Amendment somehow trumps the actions of the officers when considering the qualified immunity analysis, because it does not.

The plaintiff argues that "it was not a reasonable decision . . . for these officers to simply start shooting a man who was doing exactly what they and any other reasonable officer would expect him to do under these circumstances." (Doc. 79 at 11). The plaintiff is correct that the standard is reasonableness, but question is whether the officers' actions were reasonable in light of the facts "knowable to [them]." *White v. Pauly*, 580 U.S.---, ---, 137 S.Ct. 548, 550 (2017).

> The Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay "would gravely endanger their lives or the lives of others." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-299 (1967). This is true even when, judged with the benefit of hindsight, the officers may have made "some mistakes." *Heien v. North Carolina*, 574 U.S. ___, ___ , 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014). The Constitution is not blind to "the fact that police officers are often forced to make split-second judgments." *Plumhoff, supra*, at ___, 134 S.Ct., at 2020.

*Sheehan*, --- U.S. at ---, 135 S.Ct. at 1775.

Thus, in evaluating the reasonableness of the officers' actions, the court examines the facts "from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[1] The court's analysis must "allo[w] for the fact that police

---

1 Whether the defendants used excessive force in violation of the Fourth Amendment is analyzed under an "objective reasonableness standard."

> [T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motive. *Graham* [*v. Connor*], 490 U.S. [386][], 397, 109 S.Ct. 1865, [] 1872 [(1989)](internal quotation marks omitted). The use of deadly force is "more likely reasonable if: the suspect poses an immediate threat of serious physical harm to officers and others; the suspect committed a crime involving the infliction or threatened infliction of serious harm, such that his being at large represents an inherent risk to the general public; and the officers either issued a warning or could

(continued…)

officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Plumhoff*, 572 U.S. at 775 (internal citations omitted).

> Courts must examine "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily [or psychological] harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 383, 127 S.Ct. 1769, 1778, 167 L.Ed.2d 686 (2007)).

*Stephens*, 852 F.3d at 1318.

> This is what the Magistrate Judge did.

> Even accepting plaintiff's version of events, the court must still assess the reasonableness of the particular use of force from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396. The relevant facts, based on plaintiff's allegations alone, are as follows. The officers knew prior to their arrival at plaintiff's residence that there had been a 911 call regarding a domestic disturbance there. The officers also knew from the dispatcher that plaintiff had guns in the home. Moreover, according to plaintiff, given that the officers knew he was a gun-owner and lived in Dale County, Alabama, they could reasonably suspect that he would answer the door with a gun. The officers arrived at approximately 3:52 in the morning. It was dark. After they assumed tactical positions – Arias midway up the stairs leading to the dimly lit deck, and Partridge on the deck, beside the front door – Partridge knocked on the door seven times. After approximately seven seconds, plaintiff opened the door slowly. Plaintiff had a gun in his hand, Though (sic) it was pointed at the ground. Plaintiff saw the officers' guns pointed at him – Arias was more than ten feet away and there were five to six feet between plaintiff and Partridge – and immediately turned to retreat back into the house. The officers opened fire, hitting plaintiff twice in the

---

> not feasibly have done so before using deadly force." *Penley* [*v. Eslinger*], 605 F.3d [843,] [] 850 [(11th Cir. 2010)] (citing *Tennessee v. Garner*, 471 U.S. 1, 11-12, 105 S.Ct. 1694, 1701-02 (1985)). Also relevant is whether the officer "had [an] articulable basis to think [the suspect] was armed." *Garner*, 471 U.S. at 20, 105 S.Ct. at 1706.

*Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015).

7

> back. Plaintiff alleges that less than a second and a half expired from the time plaintiff stepped out from behind the door after he opened it until the time the officers began firing their weapons. Plaintiff never crossed the threshold onto the deck or stepped towards the officers and he never raised, aimed, or pointed his weapon at the officers. Neither plaintiff nor the officers said anything to each other prior to the shooting.

(Doc. 74 at 51).

Thus, when Arias and Partridge arrived at the residence, they possessed the following information: a 911 call regarding a domestic disturbance at the residence had come in; a second 911 call in which the 911 dispatcher was informed that there were weapons in the residence; the dispatcher informed the officers that "this was a routine domestic disturbance;" the caller reported that there were weapons in the house, but there was no indication that weapons were involved in the disturbance; and it was early morning and dark when the officers arrived. (Doc. 51 at 6-10). When the plaintiff opened the door, he was armed with a gun. The plaintiff upon seeing the officers immediately retreated into the house.

Considering the information that the officers had about the situation – an earlier domestic disturbance that precipitated two 911 calls, weapons in the residence, the plaintiff opening the door with a gun, and then immediately retreating into the house -- it was reasonable for Arias and Partridge to believe they could use their weapons to protect themselves. The cases are legion that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S.

386, 396–97 (1989). *See also*, *Kisela v. Hughes*, --- U.S. ---, 138 S.Ct. 1148 (2018); *Mobley v. Palm Beach County Sheriff Dep't*, 783 F.3d 1347, 1355-56 (11th Cir. 2015); *Davidson v. City of Opelika,* 675 F. App'x 955, 959 (11th Cir. 2017); *Wells for Chambers v. Talton*, 695 F. App'x 439, 444 (11th Cir. 2017). Thus, the state of the law did not give the officers "clear warning" that their conduct was unconstitutional; rather, the law supported their actions.

The plaintiff asserts that "[i]t is, at the very least, a fact question of whether Arias or Partridge made the decision to fire at Howe because they did not like him answering the door with a gun in his hand under these circumstances (which was within his constitutional rights to do), or whether there is any reasonable basis for the court's apparent belief that Howe was retreating into his home to shoot back when they shot nine times into his home." (Doc. 79 at 15). Contrary to his assertion, the plaintiff's motivation or rationale for retreating into his home is immaterial in addressing the question of qualified immunity. The question is whether a reasonable officer in these circumstances could have believed that a potentially dangerous situation was evolving, particularly in light of the fact that the plaintiff was armed and retreating behind a closed door.

"In analyzing whether excessive force was used, courts must look at the totality of the circumstances: not just a small slice of the acts that happened at the tail of the story." *Garrett v. Athens-Clarke Cty., Ga.*, 378 F.3d 1274, 1280 (11th Cir. 2004). And an officer need not wait until he is attacked physically before determining reasonably that he is in imminent danger of serious injury. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (quoting *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007) ("the law does not

9

require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.")). "Nothing in the Fourth Amendment barred [the officers] from protecting themselves, even though it meant firing multiple rounds." *Sheehan*, --- U.S. at —, 135 S.Ct. at 1775.

> [E]ven if [the officers] misjudged the situation, [Howe] cannot "establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Id.*, at 1190. Courts must not judge officers with "the 20/20 vision of hindsight." *Ibid*. (quoting *Graham*, 490 U.S., at 396).

*Id.*, at 1777. *See also Wells for Chambers*, 695 F. App'x at 445 n.2 ("The fact that [the police officer] was later found to be mistaken about [the suspect] having the gun as he ran away does not defeat qualified immunity. *See Penley* [*v. Eslinger*], 605 F.3d [843,] 854[, (11th Cir. 2010)] (finding that officer's use of deadly force was reasonable where suspect held a toy gun modified to look like a real gun).").

The plaintiff was armed and retreating when the officers opened fire. Because Arias and Partridge were faced with the split-second decision regarding the force necessary to protect themselves from an armed, retreating individual, their actions were not objectively unreasonable. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

The plaintiff has cited no binding precedent that would indicate to a reasonable officer that the actions taken by Arias and Partridge were unlawful. The qualified immunity defense "recognizes the problems that government officials like police officers face in performing their jobs in dynamic and sometimes perilous situations." *Merricks*,

10

785 F.3d at 558. Based on the facts of this case, the court concludes that defendants Arias and Partridge are entitled to qualified immunity on the plaintiff's excessive force claim because these officers had no "fair and clear warning of what the Constitution requires." *Sheehan*, — U.S. at —, 135 S.Ct. at 1778. In other words, because existing precedent did not place the "constitutional question beyond debate," the defendants are entitled to qualified immunity. *See al-Kidd*, 563 U.S., at —, 131 S.Ct. at 2085.

Finally, the plaintiff objects to the Magistrate Judge's reliance on *Young v. Borders*, 620 F. App'x 889 (11th Cir. 2015) because the opinion was neither binding nor precedential. (Doc. 79 at 12). The plaintiff also contends the facts of *Young* are far different from the facts alleged in this case. This objection merits little discussion. The Magistrate Judge acknowledged that *Young* was a district court decision and only discussed *Young* in the context of similarity. She specifically stated that *Young* simply bolstered her decision; she in no way asserted that *Young* governed. Accordingly, this objection is due to be overruled.

## IV. CONCLUSION

The plaintiff does not object to the Recommendation of the Magistrate Judge to grant the motion to dismiss on counts one, three, five, seven, eight and nine, and the Court finds that those counts are due to be dismissed. The Recommendation will therefore be adopted as related to these counts.

Accordingly, for the reasons stated herein, it is

ORDERED as follows that:

1. The plaintiff's objections (doc. 79) be and are hereby OVERRULED;

2. The Recommendation of the Magistrate Judge (doc. 74) be and is hereby ADOPTED;

3. The defendants' motion to dismiss counts one, two, three, five, seven, eight and nine (doc 55) be and is hereby GRANTED, and these claims be and are hereby DISMISSED.

4. Defendants City of Enterprise, Jason Anderson, Chris Hurley, Richard Hauser, and Thomas Jones be and are hereby DISMISSED as parties to this action.

5. The defendants' motion to dismiss counts four and six related the plaintiff's claims of malicious prosecution (doc 55) be and is hereby DENIED. These claims against defendants Partridge and Arias shall proceed to trial, and shall be set for trial by separate order.

DONE this 11th day of March, 2019.

    /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE